IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRYAN CABBAT, BRETT NAKOAOKALANI BROOKSHIRE PREJEAN, and ALEX REINPRECHT, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>PHILIP MORRIS USA, INC.,<br><br>      Defendant. | CIVIL NO. 10-00162 DKW/BMK<br><br>ORDER DENYING PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION |

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## INTRODUCTION

Before the Court is the Motion for Class Certification ("Motion") filed by Plaintiffs Brett Nakoaokalani Brookshire Prejean and Alex Reinprecht (collectively, "Plaintiffs"). Defendant Philip Morris USA, Inc. ("PMUSA") opposed the Motion, which was heard by the Court on July 26, 2013. After careful consideration of the supporting and opposing memoranda, the accompanying documentation, argument of counsel, and the relevant legal authority, the Motion is hereby DENIED.

# BACKGROUND

Plaintiffs, individually and on behalf of other similarly situated individuals, seek certification of the following proposed class:

> All persons who purchased Defendant's Marlboro Lights cigarettes in Hawaii for personal consumption from the first date Defendant placed Marlboro Lights cigarettes into the stream of commerce (the "Class").

First Amended Complaint ("FAC") ¶ 41; *cf.* Motion at 1 (describing the proposed class as "All Hawaii residents who purchased Marlboro Lights cigarettes in Hawaii for personal consumption from the first date Marlboro Lights were sold in Hawaii until December 31, 2010"). Plaintiffs allege that PMUSA engaged in unfair and deceptive practices by:

> induc[ing] cigarette smokers to continue smoking in spite of the growing public awareness of a connection between cigarette smoking and serious health problems including cancer, by designing, manufacturing, promoting, marketing, and selling Marlboro Lights purporting to be "Light," having "Lowered Tar and Nicotine," and as being healthier to smoke than regular cigarettes, while knowing that Marlboro Lights were no healthier to smoke than regular cigarettes of the same brand.

> 8.  Plaintiffs and the other Class members [], purchasers of Marlboro Lights in the State of Hawaii, suffered a loss of money, because the cigarettes they purchased were misrepresented by Defendant to be "Lights" and healthier to smoke than regular cigarettes, when in reality Defendant's "Lights" cigarettes were as or more harmful to smoke than regular cigarettes.

FAC ¶¶ 7–8.  Plaintiffs assert two causes of action:  (1) violation of HRS § 480 *et seq.* for unfair and deceptive trade practices ("UDAP claim"); and (2) a common law claim of unjust enrichment ("unjust enrichment claim").

For the UDAP claim, Plaintiffs assert that "[t]hrough advertisements and marketing representations featured on Marlboro Lights products, including, *inter alia*, the term 'Lights,' Defendant intended to and did misrepresent that smokers of Marlboro Lights would receive less nicotine and tar, and a less harmful product, than smokers of regular cigarettes of the same brand."  FAC ¶ 55. Plaintiffs further allege that the purported class members "did not receive the product Defendant represented and the product they paid for—a healthier cigarette that contained less tar and nicotine than regular cigarettes of the same brand— when purchasing Marlboro Lights."  FAC ¶ 58.

For the unjust enrichment claim, Plaintiffs allege that as a result of PMUSA's deceptive representations, "Plaintiffs reasonably believed, and Plaintiffs and the Class were reasonably likely to believe, that smoking Defendant's Marlboro Lights cigarettes was less harmful and resulted in the inhalation of less nicotine and tar than smoking regular cigarettes of the same brand."  FAC ¶ 62. Further, "Defendant benefited from and was unjustly enriched by its receipt of monies resulting from Plaintiffs' and the other Class members' purchases of Marlboro Lights."  FAC ¶ 63.

The present action is one of four actions that were conditionally remanded to the transferor district court subsequent to centralization before the United States Judicial Panel on Multidistrict Litigation (the "MDL panel").  All of the centralized cases were class action lawsuits on behalf of Lights cigarette purchasers against PMUSA and Altria Group, Inc.  The MDL panel ordered centralization because the subject actions "share[d] factual issues as to whether Philip Morris and/or Altria engaged in deceptive marketing of their light cigarettes and/or manipulated the design of those cigarettes to deliver more tar and nicotine when smoked than when tested by the government."  *In re Light Cigarettes Mktg. & Sales Practices Litig. ("Transfer Order")*, 652 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009).

The cases were centralized in the District of Maine before District Judge John A. Woodcock, Jr.  Each side agreed to submit two test cases for the court to determine whether the putative statewide class in each action should be certified.  Plaintiffs selected class actions from California and Washington, D.C., while defendants selected the class actions from Illinois and Maine.  In November 2010, Judge Woodcock denied certification in all four actions.  *See In re Light Cigarettes Mktg. Sales Practices Litig. ("MDL Decision")*, 271 F.R.D. 402 (D. Me. 2010).  Judge Woodcock concluded that although the class certification requirements of numerosity, commonality, typicality, and adequacy of

4

representation under Fed. R. Civ. P. 23(a) were all satisfied, common questions did not predominate, as required by Fed. R. Civ. P. 23(b)(3). *Id.* at 414–21.

Thereafter, Judge Woodcock ordered plaintiffs in the other MDL actions (including this action) to notify him whether they intended to proceed with their actions and whether they objected to the extension of his class certification ruling to those actions. Plaintiffs in most actions elected to dismiss, but Plaintiffs in this and three other actions objected and moved for a suggestion of remand. After thorough briefing of the issue, Judge Woodcock granted those motions and issued the following ruling:

> From this Court's perspective, the *Light Cigarettes* litigation has reached the point where this Court's continued oversight of the pretrial proceedings is no longer justified. There are only four remaining cases and in each, the Plaintiffs reasonably claim that the class certification issues present case-specific questions unique to the state law of their respective jurisdictions. Furthermore, the transferor courts, each of which is familiar with the state law of their respective jurisdictions, are in a better position to assess the parties' state law arguments and their impact on the class certification issue. The Court concludes that the efficiencies of consolidated handling of pretrial matters have reached the point of diminishing returns.
>
> Nor is the Court inclined to extend its class certification ruling to the four remaining Plaintiffs. First, the transferor courts should have the authority to review the Court's opinion, which denied class certification on the exemplar cases, and to decide whether its extension is merited to the cases before them. As judicial authority is about to be re-conferred on the transferor courts, their ability to properly administer their own cases should not be circumscribed. Second, although the parties elected to proceed under exemplar class certifications, they never agreed that the Court could impose its decision on

the remaining cases.  An extension of the class certification order to individual Plaintiffs who never agreed to the extension to their case and who argue idiosyncratic differences between their cases and the exemplar cases would present fundamental problems of fairness.  Finally, even though the Court has not extended its order denying class certification to the remaining Plaintiffs, that order is available to the parties and to the transferor courts and the strength of the order can be measured by its power to convince.

*In re Light Cigarettes Mktg. & Sales Practices Litig. ("Order Suggesting Remand")*, 832 F. Supp. 2d 74, 77–78 (D. Me. 2011).  The MDL panel then issued its remand order, remanding this case back to the District of Hawaii and the other three cases back to their respective transferor courts.  *In re Light Cigarettes Mktg. & Sales Practices Litig. ("Remand Order")*, 856 F. Supp. 2d 1330, 1332 (J.P.M.L. 2012).  Upon remand, Plaintiffs filed the present Motion.

## STANDARD OF REVIEW

A plaintiff moving to certify a class has the burden of showing that the proposed class satisfies the requirements of Fed. R. Civ. P. 23.  *See Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550–51 (2011).  "'[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"  *Id.* at 2550 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  Rule 23(a)'s requirements "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they

wish to litigate." *Id.* Rule 23(a) states four threshold requirements applicable to all class actions:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are known as numerosity, commonality, typicality, and adequacy of representation. *Id.*; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). The Court must employ a "rigorous analysis" to confirm that the requirements of Rule 23(a) are satisfied. *Wal-Mart*, 131 S. Ct. at 2551.

Where a putative class satisfies all four requirements of Fed. R. Civ. P. 23(a), it still must meet at least one of three additional categorical tests outlined in Fed. R. Civ. P. 23(b) in order to be eligible for certification. *Wal-Mart*, 131 S. Ct. at 2548. Rule 23(b)(3), under which Plaintiffs bring the instant Motion, requires that --

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interest in individually
controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the
controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 n.1 (9th Cir. 2010)

(quoting Fed. R. Civ. P. 23(b)(3)).  These additional requirements for class

certification are known as predominance and superiority.  *Id.*

"Rule 23 does not set forth a mere pleading standard.  A party seeking

class certification must affirmatively demonstrate his compliance with the Rule—

that is, he must be prepared to prove that there are *in fact* sufficiently numerous

parties, common questions of law or fact, etc."  *Wal-Mart*, 131 S. Ct. at 2551.

"'[S]ometimes it may be necessary for the court to probe behind the pleadings

before coming to rest on the certification question.'"  *Id.* (quoting *Gen. Tel. Co. of*

*the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

## DISCUSSION

Plaintiffs contend that the proposed class meets all of Rule 23(a)'s

requirements:  numerosity, commonality, typicality, and adequacy of

representation.  Plaintiffs further allege that under Rule 23(b)(3), common

questions of law or fact predominate over any issues affecting individual members,

and a class action is the superior method of pursuing these claims.  Although the

Court concludes that the requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a) have been met, the predominance requirement of Rule 23(b)(3) has not.  Consequently, the Motion is DENIED.  The Court addresses in turn each of Rule 23's applicable requirements.

I.    **<u>Numerosity</u>**

Numerosity is satisfied when the members of a class are "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  It is unnecessary to determine the exact size of a class in order to find sufficient numerosity.  *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008).  Generally, a class satisfies numerosity if it is likely to exceed forty members.  *Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated and remanded on other grounds*, 459 U.S. 810 (1982).

PMUSA does not challenge the numerosity of the purported class and Plaintiffs have provided uncontroverted evidence that the class would include hundreds of thousands of members.  The Court concludes that the joinder of all members of the purported class would be impractical.  The numerosity requirement of Rule 23(a)(1) is satisfied.  *See MDL Decision*, 271 F.R.D. at 414 (concluding the numerosity requirement is satisfied for the exemplar Lights cigarettes cases).

II.   **<u>Commonality</u>**

Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, "[the] claims must depend on a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. "'What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Wang v. Chinese Daily News, Inc.*, 2013 WL 4712728 at *3 (9th Cir. Sept. 3, 2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551). "'This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)). For example, "[i]f there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class." *Id.* (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011)).

Although the *MDL Decision* found that the commonality requirement was satisfied, 271 F.R.D. at 414, that decision was rendered prior to the Supreme Court's holding in *Wal-Mart*, which, as discussed above, lessened the likelihood of

a plaintiff satisfying the commonality requirement.  131 S. Ct. at 2551.  That said,

the Court concludes that there are at least some significant questions of fact here

that are common across the purported class and would reveal common answers

material to the potential resolution of the action.  Under the UDAP claim, Plaintiffs

allege that PMUSA "intended to and did misrepresent that smokers of Marlboro

Lights would receive less nicotine and tar, and a less harmful product, than

smokers of regular cigarettes of the same brand."  FAC ¶ 55.  Proving this

allegation would yield an answer common to all members of the class—i.e., either

PMUSA knowingly misrepresented to all smokers of Lights that they would

receive less nicotine or tar, or it did not—and proof of this fact is significant

because it would establish whether PMUSA employed an unfair or deceptive trade

practice to trigger a further analysis under HRS §§ 480-2 and 480-13.  It is also

significant to the unjust enrichment claim, which alleges that PMUSA unjustly

retained a benefit received from Plaintiffs as a result of the same misrepresentation.

The question of misrepresentation by PMUSA would yield an answer

common to the class and would dispose of a pivotal issue that is central to both the

UDAP and the unjust enrichment claims.  *See Cleary v. PMUSA*, 265 F.R.D. 289,

292 (N.D. Ill. 2010) ("Whether Philip Morris engaged in such conduct undeniably

involves numerous issues of fact common to the class.").  Defendants point out,

and the Court discusses below in its discussion of predominance, how some issues

of fact are not common to all of the class members.  However, the existence of common, significant questions of fact here is sufficient to satisfy the commonality requirement of Rule 23(a)(2).  *See Abdullah*, 731 F.3d at 957; *Mazza*, 666 F.3d at 589 ("Honda argues that the crucial question of which buyers saw or heard which advertisements is not susceptible to common resolution. . . . But commonality only requires a single significant question of law or fact. . . . Honda does not challenge the district court's findings that common questions exist as to whether Honda had a duty to disclose or whether the allegedly omitted facts were material and misleading to the public.  We hold that the Plaintiffs satisfied their limited burden under Rule 23(a)(2) to show that there are questions of law or fact common to the class." (internal quotation marks and citation omitted)); *see also MDL Decision*, 271 F.R.D. at 414 ("Although the Defendants dispute whether other issues of fact are common, . . . the issues pertaining solely to the Defendants' conduct are common to the entire class.").

III.  **Typicality**

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d

12

1011, 1020 (9th Cir. 1998); *see Wolin v. Jaguar Land Rover N. Am.*, LLC, 617

F.3d 1168, 1175 (9th Cir. 2010) ("'The purpose of the typicality requirement is to

assure that the interest of the named representative aligns with the interests of the

class.'" (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

1992))).  Typicality requires that a class representative "'possess the same interest

and suffer the same injury'" as the putative class.  *Falcon*, 457 U.S. at 156

(quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

      "Typicality refers to the nature of the claim or defense of the class

representative, and not to the specific facts from which it arose or the relief sought.

The test of typicality is whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs,

and whether other class members have been injured by the same course of

conduct."  *Hanon*, 976 F.2d at 508 (internal citations and quotation marks

omitted).   Applying this test, the Court concludes that Plaintiffs have established

the typicality requirement.

      Plaintiffs assert the following allegations specific to the two class

representatives:

> Plaintiff NAKOA started purchasing cigarette products in
> 1986.  From that time until 1988, Plaintiff NAKOA smoked
> regular cigarettes.  In 1988, Plaintiff NAKOA switched to
> smoking Marlboro Lights.  From that time until recently,
> Plaintiff NAKOA regularly purchased packs of Marlboro
> Lights in the State of Hawaii.  Earlier this year, Plaintiff

> NAKOA learned that Marlboro Lights were not healthier to smoke than regular cigarettes of the same brand and that smoking them does not result in a person's receiving less tar or nicotine than smoking regular cigarettes.
>
> Plaintiff REINPRECHT started purchasing cigarette products approximately 25 years ago.  From that time until 1995, Plaintiff REINPRECHT smoked Marlboro Reds, at which time he switched to smoking Marlboro Lights.  From 1995 until recently, Plaintiff REINPRECHT regularly purchased packs of Marlboro Lights in the State of Hawaii.  Earlier this year, Plaintiff REINPRECHT learned that Defendant's light cigarettes were not healthier to smoke than regular cigarettes of the same brand and that smoking them does not result in a person's receiving less tar or nicotine than smoking regular cigarettes.

FAC ¶¶ 33–34.  These allegations establish that the class representatives' claims are based on PMUSA's alleged conduct in misleading them to believe that Lights cigarettes were healthier and provided less tar and nicotine than regular cigarettes.  This is the same conduct that serves as the basis for any class-wide claims, and is the same course of conduct by PMUSA that may have injured at least some other class members.

The Court notes in the next section (regarding predominance) that there are requisite individual inquiries into whether and to what extent each Plaintiff was in fact injured.  But that individual inquiry does not defeat typicality.  What matters for the typicality inquiry is that the same conduct by PMUSA is the basis for both the class representatives' and the entire class's claims.  *Hanon*, 976 F.2d at 508.  Further, there is no evidence that there are any defenses for PMUSA

that are unique to defending the claims of the class representatives.  *See Ellis*, 657

F.3d at 984.  Accordingly, the Court finds that the typicality requirement of Rule

23(a)(3) is satisfied.  *See MDL Decision*, 271 F.R.D. at 414 ("Here the Plaintiffs

contend that the class representatives and all other Class members purchased

Defendants' light cigarettes and, contrary to Defendants' representations, did not

receive light cigarettes that were healthier to smoke than regular cigarettes.  To the

extent the class representatives assert the same legal theory as the class members,

their claims are typical."  (internal citation and quotation marks omitted)).

## IV.   <u>Adequacy of Representation</u>

The final prerequisite to class certification under Rule 23(a) is that

"the representative parties will fairly and adequately protect the interests of the

class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs will

adequately represent a class, courts must resolve two questions:  '(1) do the named

plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously

on behalf of the class?'"  *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at

1020).  Further, whether the class representatives satisfy the adequacy of

representation requirement depends on "'the qualifications of counsel for the

representatives, an absence of antagonism, a sharing of interests between

representatives and absentees, and the unlikelihood that the suit is collusive.'"

*Rodriquez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998)).

PMUSA does not directly challenge the adequacy of representation of the purported class.  Plaintiffs' counsel have extensive experience in class actions and have no apparent conflict that would preclude them from representing the class.  Further, for the reasons addressed in the discussion of the typicality requirement, the named Plaintiffs have a shared interest with the absentee class members.  Therefore, the Court finds that the adequacy of representation requirement is met.  *See MDL Decision*, 271 F.R.D. at 415 (concluding that the adequacy of representation requirement is met).

## V.   **Predominance**

A party seeking class certification must satisfy all the requirements of Rule 23(a) (discussed above) and at least one of the categories under Rule 23(b).  Here, Plaintiffs move for class certification under the predominance and superiority category of Rule 23(b)(3).  The predominance requirement is satisfied if "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Specifically:

> Although there may be "*some* variation" among individual plaintiffs' claims, *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (emphasis added), "Rule 23(b)(3)'s predominance

16

criterion is even more demanding than Rule 23(a)," *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). "A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation." *In re Wells Fargo*, 571 F.3d 953, 958 (9th Cir. 2009) (internal quotation marks omitted). Thus, "[t]he predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case," and tests whether the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 2013 WL 4712728 at *5 (9th Cir. Sept. 3, 2013) (quoting *Hanlon*, 150 F.3d at 1022).

*Abdullah*, 731 F.3d at 963–64. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

A.   **UDAP Claim**

Plaintiffs allege that PMUSA "intended to and did misrepresent that smokers of Marlboro Lights would receive less nicotine and tar, and a less harmful product, than smokers of regular cigarettes of the same brand," in violation of HRS §§ 480 *et seq*. FAC ¶ 55. Consequently, Plaintiffs allege that the purported class members "did not receive the product Defendant represented and the product they paid for—a healthier cigarette that contained less tar and nicotine than regular cigarettes of the same brand—when purchasing Marlboro Lights." FAC ¶ 58. Plaintiffs seek damages for PMUSA's alleged conduct under the UDAP claim. FAC ¶ 60.

17

In order to achieve success on a UDAP claim for damages, there are "three elements essential to recovery": "(1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." *Davis v. Four Seasons Hotel, Ltd.*, 122 Hawai'i 423, 435 (2010); HRS § 480-13.  With regard to the second element, the Court concludes that common questions do not predominate over the individual inquiries into whether each class member was in fact injured by PMUSA's alleged misrepresentations.  As a result, the predominance requirement of Rule 23(b)(3) is not satisfied.

The second element of a UDAP claim for damages requires that a plaintiff show some private injury separate and apart from an unfair or deceptive practice that would violate HRS § 480-2.  *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 113 Hawai'i 77, 114 (2006) ("'[W]hile proof of a violation of chapter 480 is an essential element of an action under HRS § 480–13, the mere existence of a violation is not sufficient *ipso facto* to support the action; forbidden acts cannot be relevant unless they cause [some] private damage.'" (quoting  *Roberts Hawai'i School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 254 n. 30 (1999), *superseded by statute*, 2002 Haw. Sess. Laws Act 229, § 2 at 916–17, as recognized in *Hawaii Med. Ass'n*, 113 Hawai'i at 107)).  Further, built into this second element is a causation sub-element requiring that "the injury alleged under

18

HRS § 480–13 be 'fairly traceable to the defendant's actions.'" *Flores v. Rawlings Co., LLC*, 117 Hawai'i 153, 167 n.23 (2008) (quoting *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 66 (1995)).

The individual inquiry required to establish injury was one of the reasons that certification was denied in the *MDL Decision*. *See* 271 F.R.D. at 416–17. Although this Court is not required to follow the *MDL Decision*, the Court concludes that there is no reason to disagree with that decision with regard to the individual inquiry of whether there was an injury in fact. Similar to the conclusion of the *MDL Decision*, this Court determines that in Hawai'i, whether Lights cigarette smokers were injured as a result of PMUSA's misrepresentations cannot be proven on a class-wide basis. *Id.*

PMUSA has proffered substantial evidence indicating that many smokers of Lights cigarettes never believed that they received lower levels of tar and nicotine (even if they were aware of PMUSA's representations to the contrary) and also that a significant number of individuals smoked Marlboro Lights for reasons unrelated to any health benefits. *See, e.g.*, Opp. Ex. 4, Decl. of Charles Taylor at 5–6 (analyzing and reviewing several peer-reviewed survey results and opining that "most smokers of light cigarettes did not believe during the class period that those cigarettes were safer for them than full flavor cigarettes" and that smokers chose light cigarettes "for a variety of different reasons, many of which

are unrelated to health"). For these smokers, there was consequently no injury, even if PMUSA misrepresented that Marlboro Lights provided less tar and nicotine. As a result, the question of which class members were actually injured (and which were not) is not apt for resolution class-wide. *See MDL Decision*, 271 F.R.D. at 416.

Further, one of the essential consequences that Plaintiffs allege resulted from PMUSA's purported misrepresentations is the phenomenon of smoker compensation:

> Scientific research has shown that smokers of "Lights" cigarettes, such as Marlboro Lights, engage in compensatory smoking behavior due to the addictive nature of nicotine, so as to receive 100% of the tar and nicotine that would be received by the smoker from the regular cigarette. This is known as 100% compensation.
> Compensatory smoking behavior consists of unconscious acts including, but not limited to: inhaling deeper; taking more frequent puffs and/or larger puffs; holding the smoke in the lungs for a longer period of time; covering the ventilation holes in the filter with the lips or fingers; and/or smoking more cigarettes, thereby enabling the smoker to unconsciously regulate the amount of nicotine and tar received.
> Defendant was aware that consumers of its Marlboro Lights often inhaled as much or more nicotine and tar than consumers of regular cigarettes through unconsciously covering filter ventilation holes with their lips or fingers, taking larger or more frequent puffs, and holding smoke in their lungs longer than smokers of regular cigarettes.

FAC ¶¶ 22–24. However, Plaintiffs have failed to establish how proof of compensation is not a predominantly individual inquiry, given the idiosyncrasies of

20

smoking behavior.  To the contrary, the Court is persuaded by the evidence

proffered by PMUSA (also discussed by the *MDL Decision*) indicating that "many

light cigarettes smokers do not fully compensate when they smoke and . . . the

extent of their compensation can only be predicted by assessing their individual

smoking habits."  271 F.R.D. at 416.  In short, proof of compensation will be

primarily proved on an individual basis given the lack of any consistent

compensatory behavior class-wide and because consumers of Lights cigarettes had

a dramatically varied level of understanding of the levels of tar and nicotine in

Lights cigarettes and the effect that could have on their smoking behaviors.  As the

Supreme Court of New Hampshire recognized:

> In this case, the record establishes that between 1976 and 1995,
> substantial information was available to consumers concerning
> the fact that light cigarettes are as harmful to smokers as regular
> cigarettes.  Indeed, hundreds of publications and television
> news reports between 1976 and 1995 informed consumers that
> light cigarettes were no less harmful than regular cigarettes.
> The trial court itself acknowledged that, during this period,
> some consumers may have known their smoking behavior
> could result in receiving greater amounts of tar and nicotine
> than smoking machines recorded. . . . Given the volume of
> information available to consumers from 1976 to 1995 about
> the compensation phenomenon, we conclude, as a matter of
> law, that the number of class members exposed to this
> information was not de minimis.  Accordingly, we conclude
> that determining the information about Lights to which
> individual class members were exposed and what they believed
> are individual issues that will predominate over common ones.

*Lawrence v. Philip Morris USA, Inc.*, 53 A.3d 525, 532 (N.H. 2012); *accord MDL Decision*, 271 F.R.D. at 417.

Plaintiffs rely on the Ninth Circuit's holding in *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092–93 (9th Cir. 2010), to persuade this Court that no individual inquiry is required in adjudicating the UDAP claim for all class members. Plaintiffs are correct that *Yokoyama* does support the notion that no individual inquiry is necessary to determine whether PMUSA misrepresented that smokers would receive less nicotine and tar in its Marlboro Lights cigarettes:

> Hawaii courts have interpreted the word "deceptive" to include those acts that mislead consumers acting reasonably under the circumstances. Hawaii courts have held that deceptive practices are those tending to mislead or deceive. A deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material. The representation, omission, or practice is material if it is likely to affect a consumer's choice. Whether information is likely to affect a consumer's choice is an objective inquiry, turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service.

*Id.* at 1092 (internal citations, quotation marks, and brackets omitted). This is consistent with this Court's conclusion above, with regard to commonality under Rule 23(a)(2), whether PMUSA made misrepresentations related to Lights cigarettes is a common question of fact that can be resolved class-wide and will result in a common answer. It is also consistent with Plaintiff's assertion that the

first element of a UDAP claim is predominantly a question common to all class

members and is subject to proof on a class-wide basis.

But even where there is an objectively determined deceptive practice

found to satisfy the first element of a UDAP claim, Plaintiffs are not automatically

entitled to damages.  Plaintiffs must also separately prove some private injury in

addition to the deceptive practice.  *Hawaii Med. Ass'n*, 113 Hawai'i at 107.  In the

context of Lights cigarettes, this is where the inquiry is inevitably individual, given

the specific idiosyncrasies of smokers and smoking habits, as illustrated by

PMUSA's evidence.  Plaintiffs' proposed application of *Yokoyama* to this case

would eliminate the required element of proving injury separate from the deceptive

act.  Indeed, in *Yokoyama*, there was no dispute as to the existence of an injury,

only whether there was a deceptive practice under HRS § 480-2 and how to

calculate the damages resulting from the undisputed injuries.  594 F.3d at 1092–94.

Accordingly, the Court concludes here that the proof of injury in the context of this

Lights cigarettes litigation will necessarily require an individual inquiry.  These

individual inquiries permeate the resolution of the UDAP claim such that questions

common to the whole class do not predominate.

## B.    <u>Unjust Enrichment Claim</u>

For reasons similar to their UDAP claim, Plaintiffs' unjust enrichment

claim fails to satisfy the predominance requirement of Rule 23(b)(3).  The two

23

elements of an unjust enrichment claim are: (1) Plaintiff has conferred a benefit upon Defendant, such that (2) retention of that benefit would be unjust. *Porter v. Hu*, 116 Hawai'i 42, 55 (App. 2007).  For the reasons discussed above related to injury under the UDAP claim, determination of the second element of the unjust enrichment claim, in the context of Lights cigarette smokers, would necessarily entail an individual analysis.  The resolution of whether PMUSA has received a benefit unjustly turns on a determination of whether there was some injury to the smoker that would not have otherwise occurred.  As discussed above, given that a significant number of Lights cigarette smokers did not fully compensate, did not smoke Lights for health reasons, and even knew that Lights may be just as harmful (or more harmful) than regular cigarettes, a determination that PMUSA was unjustly enriched cannot occur on a class-wide basis.

### C.   <u>Damages Methodology</u>

The reasons discussed above provide sufficient basis to deny certification for failure to satisfy Rule 23(b).  In addition, the Court notes that Plaintiffs have not satisfied their obligation under Rule 23(b)(3) to provide a model "establishing that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

"[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."  *Leyva v. Medline Indus.*

24

*Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  Other than counsel's bare representations to the Court that Plaintiffs' damages methodology is point-of-purchase and benefit of the bargain, Plaintiffs have provided nothing in the record that "would enable the court to accurately calculate damages and related penalties for each claim." *Id.* Without any specifics regarding how damages would be calculated, let alone whether that methodology would appropriately measure the economic impact of PMUSA's alleged conduct, *Comcast*, 133 S. Ct. at 1435, the Court must also conclude that Plaintiffs have failed to establish a methodology, as required under Rule 23(b)(3).

### <u>CONCLUSION</u>

Plaintiffs' Motion for Class Certification is hereby DENIED.

IT IS SO ORDERED.

DATED:  HONOLULU, HAWAIʻI, January 6, 2014.



Derrick K. Watson
United States District Judge

Cabbat, et al. v. Philip Morris USA, Inc.; CV 10-00162  DKW-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

25